CASE 52—PROSECUTION AGAINST G. W. SETTLE FOR RAPE.
          —January 25, 1910.

## Settle v. Commonwealth

Appeal from Madison Circuit Court.

J. M. BENTON, Circuit Judge.

Defendant convicted and appeals.—Reversed.

1. Criminal Law—Continuance—Absent Witness.—The refusal of a continuance on account of the absence of a witness could not be sustained on the ground that the witness was a non-resident, and there was no certainty that his presence could have been obtained at the next term or any term of court, since Cr. Code Prac. sec. 153, authorizes a defendant to take the deposition of a non-resident witness.

2. Criminal Law—Continuance—Absent Witness.—In a trial for rape of a girl under 16 years of age, defendant was entitled to a continuance to procure the testimony of a physician who officiated at the birth of prosecutrix, and whose testimony would show that she was over such age.

3. Criminal Law—Continuance—Absent Witness.—In a trial for rape, defendant was entitled to a continuance for absence of a witness whose affidavit showed that she would testify that she was a half-sister of prosecutrix and a daughter of

the latter's mother; that on a certain date she was at the home of her mother and prosecutrix, when several persons hired prosecutrix and her mother to start the prosecution; that the prosecution was false; that prosecutrix stated that it was false; and that she was being forced to press it.

J. TEVIS COBB, A. F. BYRD and H. C. HAZELWOOD for appellant.

JAMES BREATHITT, Attorney General, and TOM. B. McGREGOR, Assistant Attorney General, for Commonwealth.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR— Reversing.

This is an appeal from a sentence of 10 years in the penitentiary by the Madison circuit court for the offense prescribed in section 1155 of the Kentucky Statutes (Russell's St. Sec. 3773). Appellant pleaded not guilty to the indictment. He really placed his defense on two grounds. The first was that he did not have intercourse with the prosecuting witness, Drucilla Moberly. The other was that she was over the age of 16 years at the time the offense is alleged to have been committed. The establishment of either of these defenses would have authorized the jury to acquit him. It appears in the briefs of counsel that this is the second conviction of appellant for this offense, but this fact does not appear in the record. The record shows that this case was called for trial on the fourth day of the October term, 1909, that the commonwealth announced ready, and that the defendant said he was not ready for trial. The court then continued the case to the twenty-first day of the October term, 1909, on which date appellant filed two affidavits setting forth reasons which he claimed entitled him to a continuance of the case until the next term. These affidavits set forth the names of many witnesses re-

siding in that county, in Clay and other counties, for whom he had caused subpœnas issued and placed in the hands of the sheriffs of the respective counties to be executed. Some of them had been returned executed in part, and he stated that the witnesses named as absent were absent without any fault on his part. He stated in detail the testimony he expected to introduce by each one of the witnesses and that it was true. If it were true, it was certainly material and important for him in his defense. We will not state the proposed testimony of each of the named witnesses, and will refer to only two of them. Dr. L. S. Halcomb is one, and Rebecca Redman, a half-sister of the prosecuting witness, is the other. In our opinion, the materiality and importance of the two witnesses alone entitled appellant to a continuance of the case, especially, in view of the character of the commonwealth's testimony on the question of the age of Drucilla Moberly. The prosecuting witness testified that she was born on April 4, 1893, as she had been told. Her mother testified that she did not remember the date of her birth, but that it was set down in the Bible, and according to it she was born April 4, 1893. Robert Bishop, a relative of theirs, testified that he was at their home in the year 1900, and found that the way Drucilla's age was set down in the Bible she was older than her brother Allen, who was known to be the older; that he changed the date of her birth as it appeared; but was not positive whether he made the "3" or the "9." The Bible was exhibited to the jury and showed the names of all the children of William and Sarah Moberly that had been born between the years 1880 and 1890; that Allen was born July 10, 1889. All the names were apparently written by the same person and at the

same time.  Drucilla's name and the date of her birth
appeared just below that of Allen's, and showed that
the last two figures of the year of her birth had been
changed and then appeared as 1893.   The common-
wealth introduced Mrs. Matt Wilson, who testified
that she had a child born April 29, 1892, and that
Drucilla Moberly was born in the same year and
month, but before her child.  Mrs. Bell Moberly tes-
tified to the same effect.  Appellant introduced sev-
eral witnesses, who testified that the prosecuting wit-
ness and her mother stated on different occasions
that Drucilla was over 16 years of age, and that she
was born April 4, 1890.   He also introduced Prof.
Marsh, the custodian of the Berea College register,
in which the names of the students were recorded as
given by them on entering the college.  He testified
that Drucilla entered the college on September 25,
1905, and that his entry made on that date, as she
gave it to him, showed that she was born April 4,
1890.   It will thus be seen that the date of the birth
of Drucilla was an important and material question
for the defense.  It was stated in the affidavits for a
continuance that appellant could prove by Dr. Hal-
comb, who lived in the state of Oklahoma, that he was
a physician, and at the time of the birth of Dru-
cilla, was living in Clay county, Ky., and was called
to and did wait upon Mrs. Moberly at the time Dru-
cilla was born, and that the physician still had in his
possession the visiting list which he kept in Clay
county in 1890, and that it showed that Drucilla was
born April 4, 1890.   It was also stated in the affidavits
that, on the fourth day of the term when the case was
called for trial and set for the twenty-first day, ap-
pellant had an agreement with the commonwealth
attorney that they would at once file interrogatories

for the purpose of taking the depositions of Dr. Halcomb. These interrogatories were filed and sent to C. B. Dannaway, a notary public, of Olive, Okl., the doctor's place of residence, with the fee for taking them. Before the affidavits of appellant were completed and filed for a continuance, he received a telegram from Dr. Halcomb stating that the notary public was sick and for that reason the depositions had not been taken, but that he would attend to it soon and forward it. The telegram was made a part of his affidavit for a continuance. Notwithstanding this, the court forced him into trial.

It appears from the record that, soon after the trial and conviction of appellant, the deposition of Dr. Halcomb was received by the circuit court clerk of Madison county. The doctor testified in his depositions to the facts set forth in the affidavits for a continuance and gave the names of persons present at the birth of Drucilla from whom appellant obtained affidavits corroborating the doctor as to the date of her birth, which were filed with appellant's application for a new trial.

The Attorney General says that the court did not err in not continuing the case on account of the absence of Dr. Halcomb, because he was a nonresident of the state, and there was no certainty that his presence could have been obtained at the next term or any term of court. While this is true, section 153, Cr. Code Prac., authorizes a defendant to take the depositions of a nonresident witness; and in this case the deposition would have been taken and at the trial, but for the sickness of the notary public to whom the papers were sent, and upon his recovery they were taken and sent to the clerk, arriving soon after the trial and conviction.

Appellant also set forth in his affidavit for continuance what he expected to prove by Rebecca Redman, and filed her affidavit, the substance of which was that she lived in Madison county, Ky., in the year 1907; that she was a half-sister of Drucilla Moberly and a daughter of Sarah Moberly; that on a date named she was at the home of her mother and half-sister when several persons came there and persuaded and hired Drucilla and her mother to start the prosecution against appellant; that the prosecution was false and without foundation; that Drucilla told her that the charge made against appellant was false, and that she was being forced to prosecute him. As stated, the affidavits for a continuance presented much other testimony in appellant's defense; but the two witnesses referred to, of themselves, entitled him to a continuance.

It is insisted by appellee's counsel that this evidence, if admitted, would have been simply cumulative. Appellant did not introduce any person who was present at the birth of Drucilla, but, as stated, the effect of the testimony was to show the contradictory statements of Drucilla and her mother. In our opinion this evidence would have been very valuable to appellant on his trial; but, as to what effect it would have had upon the minds of the jurors, we cannot say. The verdict might have been the same, or it might have secured his acquittal, and he was certainly entitled to an opportunity to procure this evidence.

For these reasons, the judgment of the lower court is reversed and remanded for further proceedings consistent herewith.